Good morning, Your Honor. Can you hear me? Yes. Okay, perfect. May it please the Court, my name is Lia Jamilova. I represent the petitioner in this case. In this case, we have three issues and all of them weren't remanded back to the IJ. First issue that we have is that the BIA engaged in impermissible analysis of facts to determine particular social group. The BIA under the 8 CFR is not allowed to do so and they're only allowed to engage in de novo review of facts, sorry, de novo review of the law and for the facts they only can review under the clear air standard. Here they engage in analysis of fact and found against us. But it doesn't even matter what they found. What matters is they could not engage in this analysis. Where do you contend they did engage in that? When they analyzed whether or not we met the particular social group requirement, they actually analyzed his relationship to his father and whether or not it's enough to meet the particular social group. But where did they find facts? I mean, I understand the legal point, but how does that apply to this? Where in the BIA decision are you claiming that occurred? Well, they state the fact that prosecutor targets a family member simply blah, blah, blah, blah. So they analyze facts comparing it to our facts. Right. But why is that? I mean, the concern with that impermissible fact finding is just that actually discovering or coming up with some new fact. This seems to be more analysis. They cannot engage in any fact finding. They cannot get into the facts of our case, whether or not he is related to his father, whether or not the father was a victim of a crime and all that stuff. They only can analyze what was before the IJ and analyze it under a clear error. Go ahead. Yes, Your Honor. Second issue that we have is that they applied the matter of LEA impermissibly. Because at the time the IJ decided the case, LEA in the existing form was not a case yet. It was only the first LEA and not the second one. The BIA, when they decided our case, they engaged in analysis comparing our case to the LEA-2, which came into law after our case was decided. So BIA should have remanded the case instead of deciding it themselves. But here, unlike in the previous two cases that we heard, there is an explicit finding or explicit statement, I should say, from the board adopting the immigration judge's nexus finding. They say any motive to harm the respondent because he was a member of his family was at most incidental. I realize you're challenging the merits of that, but isn't that an independent basis for the board's decision that if we uphold that, the LEA question is irrelevant, isn't it? No, it's not. Did the board anywhere actually rely on the second LEA opinion? Yes, they did. Actually, at the end, if you look at the last page, end of the second paragraph, they're citing matter of LEA-2. Oh yes, in one sentence, but the whole rest of the discussion is about the nexus. Yes, and that's another problem. They confuse nexus and the particular social group. They analyze it together. And I believe the matter of LEA has the same problem because it's clear to me that the matter of LEA in the current adaptation is created to limit the number of people who can possibly get asylum. But when the attorney general does it, it seems like he's uninformed that first we have nexus, that we have to prove that just being a member of a particular social group doesn't mean you're going to get granted asylum. You need to have nexus. And second, you also have to prove that you're a member enough of this specific family that you're not remotely related to it. So that's where the analysis for the asylum comes in place. And they just mix it up and analyze it all together. Because the social visibility, social distinctions that they talk about in LEA and heighten it to the very famous or infamous families, it's more about the nexus. It's more about why you got persecuted as a member of this family and not that you're a member of this family. I'm not sure I followed that. I mean, I understand some of the criticisms you made about LEA, but I don't understand this one. I mean, it seems like LEA does treat the cognizability of the group and nexus as separate requirements. So from the beginning, my problems with LEA, besides of what was stated in previous cases, the part one contradicts part three. First part says you deal with the analysis. Part three says it doesn't even matter because most of the families will not meet it anyway. Then what's the point of the trial or fact of looking into the facts at all? Second part one asks to determine social distinction. And part three says most of the family will not meet it. So the social distinction is not whether or not you're a member of this family. It's about the role of this family in the society and connection to everything that happened, the persecution. So that's more of a nexus issue than just a particular social group issue. How famous is your family does not affect the fact that it's a family and the family is a particular social group. And the fact that it challenges that family is a particular social group is kind of ridiculous because it comes back to the matter of ACOSTA that requires immutable kinship. I don't know any other social group that would be more immutable kinship than the family. Also, the fact that laws of so many countries, all of them probably, regulate marriage, regulate adoption, regulate inheritance. It all shows that every society recognizes family as a linchpin of the society. Actually, the Attorney General in the current administration do recognize it when they argue for election, but when it comes to the immigrants, all of a sudden family, eh, you know, not so much. So this reasoning in LEA, it just does not stand common sense. Also, country conditions in other countries but the United States, they make families stick together much more than in the United States. And they heighten the visibility of the families outside of the U.S. People live together no matter the age of the kids. They have to survive the criminal situation in the country. So all that tightens them together, and that makes them socially visible. For example, in some cultures, you'll not only have your first name and your last name, you have the name of your father added to your name, which is a patronymic. So not only people can say which family you belong to, like in our case, but also they can say who your father is. With all this data and with all the Ninth Circuit cases, it's completely unclear how can one say that family is questionable in a particular social group. If you're going to account for any other particular social group. At least you're making an affirmative argument why our colleagues did not, but it's still hard to see how we reached it in your case. I am using the Ninth Circuit law that says that it's a consistential in a particular social group. And here we have completely also the problem with L.A. is it's not reasoned. He does not explain why most of the families will not meet this requirement. Like where does it come from? What data he used? Nothing. Just out of thin air, and especially in the case where there's… Well, here's a conceptual question, as long as we're getting into this, although I do think we're going to have a hard time reaching this in your case. What… If the actual reasoning of the opinion is unreasonable, I mean that is it just says things that don't make any sense, and coming to the conclusion that the family is in a particular social group, we thought that. Do we… Is that an answer to the Chevron determination, i.e., this is not a reasonable decision, or do we step back and say, well, his reason was pretty bad, but there is a sensible thing, explanation what one could give as to why family isn't necessarily a social group, and we should… And what Chevron operates on is the ultimate… Whether there are circumstances in which he could be right, even though the way he explained it doesn't make any sense. Do you understand what I'm saying? It's kind of subtle, but there's a difference. How does the Chevron analysis work? Do you look at the actual decision and sort of critique it, or do you look at, you know, from a bird's-eye view, whether the conclusion might be justifiable or is justifiable, but not on the reasoning that was given? First of all, I don't think this court or any other court can justify a decision based on something else that is in the decision. The Attorney General had his chance to come and say whatever he wanted to say, and he said it, and we can only operate on that. And if he did not give us a reason, we should recognize this law as unreasonable and bad law. If he wants to come back again and do it more reasoned way, by all means, he has the power. Probably it's going to be a different NIJ, but who cares? But in this case, we can only look at what it says. And what says does not make any sense under what we see around happening in the world. It doesn't make sense under the law of this court and other circuits, and it doesn't make sense under common sense. So in that, I don't think we can give a Chevron deference to something that does not make sense. Good. What in all the discussion or the fairly. Discussion in these briefs about this important question. There was very little attention to the Supreme court opinion in Thomas. How do you think that fits into? So I think what happened in, in my case, for example, and the reason why we don't see that happening is that. First, we all look at the cases at the facts of our case. And the fact of our case is so outrageous on jurisdiction and. Retractive application that it was so obvious that it has to be remanded that. We didn't think about going into deeper issues. Also the matter of LEA. That's essentially what Thomas did, right? And I mean, pre LEA, it did say, as I understood it. Because I was involved in the case. It essentially said. Yes, family can be a social group, but you need to prove it up. Is that, or maybe it can be a social group. That's what I believe. As far as the Supreme court went. And so at least that much. Was. Established at that point. You couldn't just walk in and say necessarily any family. Under any circumstances. We still have to prove that it doesn't go anywhere. Like, for example, you have to prove that you are a member of a certain family that is being targeted. And again, it's proving that you're a member of the family and proving nexus. So to be granted asylum, you have to prove all these things. But to say that majority of the families will not meet the particular social group by default. That's actually going beyond what Supreme court said. Family can be an okay judge. It looks at every at the facts of every case when it looks at the nexus. Okay. You have about two minutes left. Yeah. I will reserve. Good morning. Your honors may please the court. My name is David Shore and I represent the attorney general of the United States. The petition on this matter, Mr. Torres had a full and fair opportunity to present his asylum and withholding of removal claims before the immigration judge. And then to appeal those to the board at each instance, the agency denied his claims as speculative. The issue before the court is whether substantial evidence supports that finding. Now, unlike the other cases. Or a problem, maybe more so a question of degree. In this case, it is absolutely clear. That the board affirmed the immigration judge's nexus finding. And then said, they said explicitly, we agree with the immigration judge. And they added further. The construct is not cognizable under the attorney general's decision and, you know, it's not cognizable citing the attorney general's matter of LA to decision. The court need not reach that issue. The government is not changing its litigation position at this stage. The court need not and should not reach that issue. Because there is absolutely no evidence of nexus in this matter. Certainly no evidence compelling a finding of nexus. But I do just want to address a few points about LEA 2. And again, the government is not changing its position. The court need not and should not pass on LEA 2 in this case. But I just want to. Did you brief any of it? The merits of the LEA opinion? Only to say, your honor. Well, no. Only to say, your honor, that. Now you're going to get up and argue something you didn't agree. No. Well, I don't wish to do that. I don't wish to sandbag the petitioner. But just to clarify the record. And that is to say, the only thing LEA 2 did was say. We have to treat family based social groups the same way we treat all social groups. Well, the board itself said in one of the other two opinions. That it precludes you from having family as a social group. And that's certainly the way it's largely being read. And the way the board itself read it at one point. There are sort of two points to it. One of them is you have to do it individually. But that was the law before. And the second one is essentially. And you're going to. Pretty much not going to happen. Unless you have something very unusual going on. The board statement was even more than that. It was never. To any extent, your honor, that the board would ever say. Family is categorically not a particular social group. That would be error. Just as it would be error to say family categorically. Is a particular social group. There. Factors. I mean, everybody has a family. And the institution is. Very well demonstrated. Is. You know, embedded in, in every society. The fact that people who are connected to each other. My blood and residents and so on. Are. An institution, no institution that. Has separate function. Everybody talks all the time about who's in whose family and how they're related and. And so on and so on. So what makes one family more than another family socially distinct? Everybody. I mean, everybody has a race and everybody has a family. And. What more you're supposed to demonstrate. I don't really get. Well, so it is a case in fact, specific analysis. There is no, you know. I need to know what I'm specifically trying to prove. Yeah. And certainly, you know. The attorney general did not say you have to be famous or infamous. We have to look at the society in question to say, is your family. Set apart in the same way. To be set apart. That's the question. You don't, you don't ask whether, whether, whether. You know, Asian people are set apart differently from black people. In the United States. It's not a question. They both have a race and they both can be persecuted because of it. Your honor respectfully family has to be set apart. Your family. Not sort of family. The, in the sort of this. Abstract notion of family. But you, the petitioner, your family has to be set apart because that is the meaning of social distinction. In for all social groups. That's what social distinct means. Meaningfully set apart. Can I ask you just a point of clarification on just how you do the analysis in your view. So. In the case of the petitioner here. Does his family need to be socially distinct within. The country of residence or the town or the region. Because it seems that the broader you go, the less likely. Somebody's family would be to be socially distinct, but. If you say, you know, Is your family socially distinct in your neighborhood, then perhaps the answer would be yes. More likely. Yes. Well, so for particular social group. When we're talking about society. There. It can vary depending on the facts of the case. So I do not believe your honor that there's a per se rule that we're talking about. Countrywide necessarily. But I do want to take a step back. And say. Again. Matter of it. The court need not and should not pass on the validity of matter of LA in this matter. I think we're curious as to, because this will come up. And it's calm now in two other cases. And it's likely a recurring issue. For your views on just sort of how the analysis is supposed to. Work. So, I mean, if somebody is from a small town and there. Infamous or notorious family within that small town. But once you get outside that town, nobody knows who they are. Is that, does that meet the test or not? I think, I think there would have to be. More facts. Sort of to know that from what you're suggesting your honor, it would sound. I hesitate to sort of speak for the board where the board hasn't really. The board actually said. As I understand. That the ordinary families. It has to be a clan or a. You know, something. Society sort of elevates above. The blood ties themselves. That's what I understood. That the usual institution that we all think of as a family and we all spend a lot of time worrying about. What's family and. So on. And, and marriage. And adoption. And establishing. For all kinds of purposes. Who's related to. Someone that, that is going to cut it. And it needs to be some other concept. Essentially. In particular societies. Like a cast or a plan or a. A larger. And that's what I thought there was. In the second. So. In parts of the. And other parts of the opinion, they were simply saying, and you have to prove it up. And I understand that. And that's. Seems perfectly fine. It's not really a new law. But having to. So, for example. I mean, in some cases I've had instances in which the question is, you were talking about extended family. And the extended family. That's a different problem. But. And I, I, I, I, I, I, I, I, I, I, I, I, I, I, I, I, I, I, I, I, I. And I'm not, I'm not, I'm not, I'm not, I'm not, I'm not. At points, the only thing is you should be saying that's not going to cut it anyway. Even if you were. And so. How would you. You seem to be. Just equivocating and saying, well, it's all facts. It's all facts. But the, the opinion ultimately, it's not all facts. There's more to it. And then simply. Do you have a, I apologize, your honor. I mean the, the. Decision and Lea, you know, there hasn't been. That much in the development of the case law by the board. Applying Lea. On all fours. So I really. It's difficult to sort of. Put myself in the board shoes and address various hypotheticals that the board has not yet considered. But the social distinction requirement is not just simply. Well, oh, the notion of a family is, you know, is accepted. So therefore your family is set apart. No, you have to prove that your family is socially distinct. Now, what precisely that entails. The board would have to speak to that in the first instance, your honor. And so I, I'm not really equipped to do so. Here, but what I do want to get back to are. The dispositive facts of this case, which are. The opinion says in the ordinary case of family group will not meet the standard. Because it will not have the kind of identifying characteristics that render the family socially distinct. So, as I said before, they are. And the earlier talk about kinship and clan groups. As the kind of thing they're talking about. So. There is a. In addition to the procedural point, there's a substantive point. You're not. Willing to cope with it. Or to defend it. Based upon these immigration decisions in the ordinary case, a nuclear family will not without more constitute a particular social group. Because most nuclear families are not inherently social distinct. That's what you have to defend. If you're going to defend it. So the. Yes, your honor. And, and the social distinction requirement is, you know, meaningfully set apart in society. In the same way as, you know, those with minority political opinions, minority race, et cetera. Are, you know, somewhat the other. And so this, you know, used in generous notion for particular social group. Which the court has deferred to. And so. You have to show the same thing with regard to your family group. Families don't get a special exemption. And that is how the government reads matter of LEA. Not as imposing any sort of heightened. Requirements. But the court need not even get there because there's no evidence of nexus to family. In this case, the agency was not compelled to adopt. Mr. Torres is inference that any drug cartel has interest in any way in his family. He stated that, you know, four hours from his hometown. The Knights Templar set up a checkpoint outside of a large city. And they stop everybody. Everybody who passes through. And just as they did three of his relatives in different years, when they pass through. If anything, his evidence shows negative interest in his family because each time they found out who they were. They released them. One in one instance, there was a cousin who was harmed. And according to Mr. Torres, that was a case of mistaken identity. Had they known who he was, they would have released him, which they did. And as far as his reliance on the surname, the Torres surname. Well, two of his cousins that were stopped at that roadblock. Neither of them had the Torres surname. He testified. It was only his father. And I would also like just to point out that he surmises that his father was detained for two days before being released unharmed. Because he shares this surname with a member of a cartel. There was no testimony that the cartel said, We think you are related to so-and-so this was all speculation. I mean, and speculation is what is at the core of this claim. And there's also substantial evidence supporting the finding that there's no continuing or particular interest in the petitioner's family. His cousins, his parents, his two brothers, two sisters, all safely remain in the state. And by all accounts, they, they simply, that is. Except for his two sisters who reside within the town who face no alleged harm. The rest of his family simply seems to just avoid traveling four hours to the roadblock. So to say that the evidence compels a contrary conclusion where the, I mean, it would be false. The evidence doesn't even support it. Could you address before you run out of time, the petitioner's argument under the convention against torture and The board did not adequately consider the evidence of country conditions that was presented. Yes. Your honor. So well, first off the presumption of regularity defeats that argument at the outset. Second, under this court's case law, a case like the brief Shrestha where the board just states a conclusion. This court has stated that they could look behind a simple statement of a conclusion to the immigration judges analysis as a guide to what, you know, what is the basis of that conclude that conclusion is here, the immigration judge undoubtedly considered country condition evidence. He noted that violence, he noted violence in the state of Guerrero specifically, but he said, look, you've set forth a chain of speculation. The board too, by the way, cited matter of JFF, which holds that chain of supposition fails to prove a cat claim. That is you will more likely than not suffer torture with an official's consent or acquiescence. And that's precisely what we have here. A lack of evidence of a particularized threat of torture. We've got a statement. And if we look at what he argued to the board, it was unspecified background evidence shows that violence and torture occur and that police are corrupt. Therefore, you know, I carried my burden. The board was addressing precisely what he put forward to it. And they said, no, citing matter of JFF. So the cat claim was properly denied as speculative. And I just want to just last note, there was no argument in petitions, open brief of DeNovo fact-finding by the board, Spanish wave. And as far as, and just to answer this hypothetical, if all we had was LEA, which we don't in this case, we've got the nexus finding, which was specifically affirmed. The government likely would have sought remand, but based on the question of retroactivity, the board has not addressed the Montgomery ward factors, which they applied to their precedent in matter of Cordero Garcia. So the board should address. There's certainly arguments to be made on both sides. I can't stand here and make those arguments where the board is not in the first instance as to whether or not LEA should apply retroactively to pending cases. But in any event, for all the reasons discussed, the court should deny this petition. Thank you, your honors. Thank you very much. We thank the lawyers. Well, no, do you have some. Yes. So about Chevron difference, as you could see the oil attorney does not read the keys the same way this court does. So in that condition, we cannot refer it under Chevron difference. We need to have a clear law that all the parties understand the same way. And this case is not a clear law. Also what the oil attorney has been talking about is mainly nexus is mainly why the harm that somebody suffered is not enough for asylum. That's nexus. That's the level of persecution. None of this is related to whether or not he's a member of particular social group. And also by discussing nexus, they're putting the cart the wagon in front of a horse. You first have to decide whether or not this person is a member of any group whatsoever, and then talk about harm connected to this group. And because of this group, you can not discuss nexus first and then discuss particular social group or not discuss it at all. Particular social group should come first. Well, but that's not the way you brief the case either. That's all I'm saying right now is how the government addresses it right now that they talk about nexus. Also what happens case in case again, whatever harm is happening in the case, it doesn't matter the facts of the case. We know that the government will argue that it's just a random criminal activity. That's a, just a random, whatever is happening in the country. That's just a blank defense that goes in every case. They do not consider a fact of the case by itself. And finally, very briefly address the cat issue. Sorry. You want to briefly address the cat issue. Yes. So the immigration judge, I just looked to refresh my memory. He does address country conditions, but he has nothing to say about the facts of this case that the cousin was actually tortured by the cartel. And that father was kidnapped. Nothing of that is in the, in the judge's decision. And then the board does not address it at all. And just blindly says there's one. I did not meet the burden. However, they don't even say that they affirm the decision of the judge. It's like their decision is flies in the air on its own, without the judge's decision. They just happened to be the same. Okay. Thank you very much. You're trying to get very helpful. Thank you very much. The case of Torres, Rodriguez versus or is submitted and we will go to the last case of the day, United States versus.
judges: Berzon, Miller, Bress